UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DONNA S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:22-cv-00071-MJD-JMS |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Donna S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in October 2020, alleging an onset of disability as of September 5, 2020. [Dkt. 9-5 at 5-15.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Shelette Veal ("ALJ") on August 26, 2021. [Dkt. 9-2 at 31-51.] On September 13, 2021, ALJ Veal issued her determination that Claimant was not disabled. *Id.* at 13-30. The Appeals Council then denied

Claimant's request for review on December 20, 2021. *Id.* at 2-7. Claimant timely filed her Complaint on February 22, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[1] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)

---

[1] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

(citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.   ALJ Decision

ALJ Veal first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 5, 2020. [Dkt. 9-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease of the cervical spine, with radiculopathy; degenerative disc disease of the lumbar spine; and obesity." *Id.* at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed

3

impairment during the relevant time period. *Id.* at 19. ALJ Veal then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b); this includes: lifting and carrying twenty pounds occasionally and ten pounds frequently; standing or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; a sit/stand option, so after sitting for thirty minutes, can stand for thirty minutes, then alternate throughout the day; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing on level surfaces; and occasionally stooping, kneeling, crouching, and crawling.

*Id.* at 20.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 24-25. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as General Office Helper (DOT 239.567-010), Mail Clerk (DOT 209.687-026), and Routing Clerk (DOT 222.687-022). *Id*. at 26. Accordingly, ALJ Veal concluded Claimant was not disabled. *Id.* at 26.

## IV.  Discussion

Claimant challenges the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She argues that the ALJ made several errors:

> (1) Decision is premised on cherry-picked evidence and failed to provide an accurate and logical bridge to support the critical findings and conclusions; (2) ALJ erred in assessing the medical opinions; (3) residual functional capacity (RFC) is unsupported given that it does not accommodate Plaintiff's conditions; and, (4) ultimate Decision is unsupported because (a) the ALJ failed to provide a complete picture of Plaintiff's functional capacity to the vocational expert (VE) and (b) the postural requirements of General Office Helper exceed Plaintiff's current capabilities.

[Dkt. 11 at 1-2.] The Court addresses Claimant's arguments as necessary below.

4

### A. Medical Opinions

#### 1. *State Agency Consultants*

Claimant argues that the ALJ erred when she failed to subject a recent MRI to medical scrutiny. [Dkt. 11 at 15.] Claimant's May 2021 MRI demonstrated that Claimant had "significant disc protrusion at the C5-6 level causing severe amount of bilateral neural foraminal narrowing" and "small protrusions throughout her cervical spine." [Dkt. 9-7 at 71.]

The Court agrees with Claimant that the ALJ impermissibly assessed the MRI report and subsequent medical records on her own without the assistance of a medical expert. The Seventh Circuit has made clear that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *cf. Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Stage v. Colvin*, 812 F.3d 1121, 1125-26 (7th Cir. 2016); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018*); McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). The Seventh Circuit also has said repeatedly that an ALJ may not "play[ ] doctor" and interpret "new and potentially decisive medical evidence" without medical scrutiny. *Goins*, 764 F.3d at 680 (ruling that the ALJ erred in failing to submit claimant's first MRI in 11 years to medical scrutiny and in interpreting results herself). The reason for this rule is sound: without the benefit of an expert opinion, ALJs are simply not qualified to make their own medical determinations. *Akin*, 887 F.3d at 318. Similarly, "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage*, 812 F.3d at 1125; *Goins*, 764 F.3d at 680). An ALJ may not conclude, without medical input, that a claimant's most recent MRI

5

results and medical records are "consistent" with the ALJ's conclusions about her impairments. *Akin*, 887 F.3d at 317–18.

In this case, the ALJ alone reviewed Claimant's post-April 2021 medical records, which included records discussing the MRI, showing significant disc protrusion at the C5-6 level causing severe amount of bilateral neural foraminal narrowing, a positive Spurling's test, a positive cross straight leg test, a positive Fortin finger test, a positive Gaeslen's test, and a diagnosis of SI joint dysfunction. [Dkt. 9-7 at 69-70, 75-76.] Indeed, Claimant's medical records contain "significant, new, and potentially decisive findings" regarding her severe impairments, which "could reasonably change the reviewing physician's opinion." *Stage*, 812 F.3d at 1126; *Goins*, 764 F.3d at 680. In finding the state agency medical opinions persuasive, the ALJ acknowledged that "[the consultants] were unable to review newer evidence of record, including imaging of the claimant's spine," but concluded that "while the claimant was eventually diagnosed with degenerative disc disease of the cervical spine, she did not have significant clinical deficits. At most, she had a positive Spurling's test. She did not have additional findings that would necessarily warrant greater restrictions." [Dkt. 9-2 at 23.] As noted above, this was error. As in *Akin*, where the Seventh Circuit reasoned that the ALJ was not qualified to determine on his own whether the MRI results would corroborate the claimant's complaints "without the benefit of an expert opinion," 887 F.3d at 318, here, the ALJ was not qualified to assess on her own how the MRI results, various positive musculoskeletal tests, and new diagnosis of SI joint dysfunction factored into her conclusions about Claimant's impairments, if she even assessed them at all, which is unclear from her explanation. *See also McHenry*, 911 F.3d at 871. This amounts to the ALJ playing doctor, "a clear no-no," as the Seventh Circuit has routinely

6

admonished. *Goins*, 764 F.3d at 680 (citations omitted). The ALJ's decision therefore requires remand.

*2. Treating Provider*

Claimant also contends that the ALJ erred in rejecting Claimant's primary care physician Dr. Spendal's opinion, the only medical opinion from a medical source with a treating relationship with Claimant. [Dkt. 11 at 17.] When evaluating medical opinions, the ALJ must consider the supportability of the opinion, the consistency of the opinion, the source's relationship with the claimant, and the source's specialization. 20 CFR § 404.1520c(c).

Here, the ALJ adequately considered Dr. Spendal's opinion. As the ALJ noted:

> Dr. Spendal's opinion is not very persuasive. While he has had a treating relationship with the claimant, he ultimately provided an opinion inconsistent with his own treatment notes. He indicated that the claimant essentially could not even sustain a range of sedentary work activity, given her need to only sit for three hours, as well as her need to be off task and absent from work. However, during primary care appointments, he noted very few clinical deficits. At most, during an appointment in September 2020, only a month prior to his offered opinion, he noted only tenderness and decreased motion in the lumbar area. During all of his other appointments with the claimant, he did not acknowledge greater deficits. Moreover, during the October 2020 appointment, he suggested that the claimant had done well with medications.

[Dkt. 9-2 at 23] (citations omitted). The ALJ properly considered Dr. Spendal's level of expertise, treating relationship, and especially, the supportability and consistency of his opinion. The ALJ's analysis and conclusion that Dr. Spendal's medical source statement was neither consistent with nor supported by the rest of his medical notes is supported by substantial evidence, namely, Dr. Spendal's medical records. [Dkt. 9-7 at 28-36] (noting pain better with medication; noting pain when stopped medication; noting "[b]ack pain intermittently now. . . Full ROM, no tenderness. . . She seems relatively pain free today however her X-Rays show

multi level DDD. . . I allowed her to return to work but with a 20 pound weight lifting restriction."). Thus, the ALJ's rejection of Dr. Spendal's opinion was not error.

    3. *RFC*

Claimant next argues that the ALJ erred by failing to include limitations that accommodate all of her impairments. [Dkts. 11, 14.] The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga*, 794 F.3d at 813.

    Here, the ALJ found that

> claimant has the residual functional capacity to perform light work, including: lifting and carrying twenty pounds occasionally and ten pounds frequently; standing or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; a sit/stand option, so after sitting for thirty minutes, can stand for thirty minutes, then alternate throughout the day; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally balancing on level surfaces; and occasionally stooping, kneeling, crouching, and crawling.

[Dkt. 9-2 at 20.] In so finding, the ALJ relied heavily on the state agency medical consultants' assessments, which, as noted above, were conducted without review of the post-April 2021 evidence. [Dkt. 9-2 at 23] ("Overall, the consultants provided highly persuasive opinions. . . [Claimant] did not have additional findings that would necessarily warrant greater restrictions.").

Because the ALJ relied heavily on state agency assessments that did not review all of Claimant's medical evidence in forming her RFC, her RFC finding is unsupported. Further, as noted above, the ALJ's summary dismissal of all of Claimant's newer medical evidence as not "necessarily warrant[ing] greater restrictions" is error, as it is based on the ALJ impermissibly interpreting the evidence without medical review.

Furthermore, the ALJ did not adequately explain how the Claimant's testimony regarding her daily life undermined her claim of disability. Pursuant to SSR 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Once established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* SSR 16-3p, which rescinded SSR 96-7p on March 28, 2016, requires that the ALJ assess a claimant's subjective symptoms, but not her credibility. *Id.* at *2. The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests"). At stage two of

9

the SSR 16-3p analysis, the ALJ considers the Claimant's alleged symptoms in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3).

The ALJ found Claimant was not "as limited as one would expect, given her allegations of disability" in light of her endorsed activities. [Dkt. 9-2 at 23.] The ALJ further explains:

> [T]here are inconsistencies in regards to the claimant's allegations of severe limitations and the record as a whole. As to activities of daily living, the claimant reported that she lived in a house with her family. In describing a typical day, she noted that she performed a few chores around the house, let the dogs out a few times a day, and cooked dinner. She suggested that she had problem standing, such that caring for her hair and shaving were difficult. She explained that her chores were limited. The claimant reported that she was able to drive and go out alone. She noted that she did go shopping if needed. She stated that she did socialize with others, especially on the weekends. When asked about hobbies, she noted that she was down to watching television or talking to friends and family. She advised that she did most activities less often, explaining that she did have to do many things with accommodations. She focused on problems with pain with most exertional activities. Overall, the claimant has not been as limited as one would expect, given her allegations of disability. She suggested that she had some limitations due to pain, but she still endorsed being fairly independent in her daily life.

[Dkt. 9-2 at 23] (citations omitted). However, this explanation is lacking. The ALJ's description is consistent both with the medical evidence and Claimant's subjective symptom reports. However, the ALJ failed to articulate how Claimant's ability to perform the limited activities the ALJ summarized leads to the conclusion that Claimant is not as limited as one would expect, nor how it has any bearing on Claimant's ability to work. *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (discussing how a claimant's persistence in struggling through daily activities "does not mean . . . that she can manage the requirements of the work-place"). Indeed, "there are critical differences between keeping up with activities of daily living and holding down a full-

time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Therefore, on remand, the ALJ should address how Claimant's ability to perform the summarized daily activities bears on the Claimant's ability, or lack thereof, to meet workplace requirements.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 10 JAN 2023

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.

11